Case No. 19-6469, EEOC v. West Meade Place LLP, Argument not to exceed 15 minutes per side. Ms. Ann King, you may proceed for the appellant. May it please the Court, Ann King for Appellant, United States Equal Employment Opportunity Commission. The EEOC asked this Court to reverse the District Court's decision concluding that Karma Keene, former laundry assistant at Appali West Meade Place, was not covered under the regarded-as definition of disability in the amended ADA. In amending the ADA in 2008, Congress made clear that a plaintiff may establish regarded-as coverage by showing that an employer took prohibited action because of an actual or perceived impairment, whether or not the impairment substantially limited a major life activity. The record here meets that standard because it permits the conclusion that West Meade took prohibited action, here termination, because decision-maker Teresa Jarvis believed that Keene had an actual or perceived impairment. So what is the evidence, Ms. King, that Ms. Jarvis regarded the plaintiff or appellant as having a disability? And yes, Your Honor, well, there's two pieces to the showing under the regarded-as prong. The first is that the decision-maker or the employer believed the employee had an impairment. And then the second part is that the employer took prohibited action based on that impairment. So the record… Let's ask about the belief portion. What is it to show in the record that Ms. Jarvis believed that the plaintiff had a disability? An impairment, okay? An impairment, correct. That's right, Your Honor. So there's a few key pieces that I'd like to highlight. There's evidence that Jarvis believed that Keene either had anxiety disorder or another serious unspecified medical condition that precluded Keene from working. On the anxiety issue, she disclosed that in her job application, right? She disclosed that she had anxiety and disclosed some mental health history. But most importantly… I was going to finish the question. And they still hired her knowing she had some issue with anxiety. So it's maybe odd to think that they would later then terminate her for her anxiety. Well, Your Honor, although it's true that she disclosed mental health history on her application, I think the really important point is that she disclosed anxiety in the key meeting before the decision-maker terminated her. So it's not clear from the record whether Teresa Jarvis had access to the job applications, but it is clear, as Jarvis admitted, that Keene told her that she had anxiety when Keene requested intermittent leave. And as Jarvis explained in her testimony, the request for intermittent leave led Jarvis to believe that Keene had a medical issue where Keene could not work her job duties. And the termination paperwork also reflected that Jarvis concluded Keene was unable to complete her job duties after Keene reported a medical condition. The other important evidence that shows that Jarvis believed Keene had an impairment was Jarvis's immediate drastic reaction to Keene's request for leave, which is when Jarvis learned Keene had a medical issue in Jarvis's word. Can I ask you whether the request for leave was couched in terms of FMLA leave? It was couched through a FMLA certification, and here Jarvis sought intermittent leave. It turned out she wasn't eligible for that because she hadn't worked there 12 months. I guess, I mean, this case strikes me as an FMLA retaliation case. An employee requests FMLA leave, and then the company terminates her. And it sort of feels to me like maybe it would fall in that basket, but, you know, that's not the way the case is proceeding. Otherwise, you're asking us to potentially expand this regarded as definition when it might more cleanly fall under another area of employment law. Well, a couple of responses to that, Your Honor. First of all, if an employer is covered by the FMLA and the ADA, as was the case here, then an employer has an obligation to consider what are its legal responsibilities under both statutes when presented with a situation like this. And I think this is actually, in a factual way, distinguishable from the sort of general FMLA retaliation case. For one point, the fast timeline where Jarvis conceived of a belief, in our view, is that a jury could so find that Keene had a serious medical condition that precluded her from working. That happened immediately upon the request for leave, and Jarvis terminated her the next day. But also, I would just add, as another point, in case there are concerns about whether this would broaden regarded as coverage, I'd emphasize that Congress meant the definition of disability, including the regarded as prong, to be broad when amending the ADA in 2008. And coverage is just a way to get your foot in the door as a plaintiff. There are many other steps that an employee must take in order to establish liability, and employers have access to defenses, including the business necessity defense. So I don't think it is inconsistent with the ADA, given that Congress underscored that the definition of disability should be construed broadly. So just to boil it down, your best evidence that this was ADA discrimination regarded as, because the termination came quickly after this discussion about serious anxiety? Well, I don't think it's not just the speed, Your Honor. I think a jury could deem Jarvis' reaction quite drastic, although Keene requested intermittent leave, and it seems from the record that Jarvis didn't understand that that was the nature of the request. But a jury could find unreasonable an immediate request for a medical release, and that Jarvis told Keene she had to leave the workplace immediately as well, and that Jarvis terminated Keene without allowing her the opportunity to provide the medical release, because Keene was terminated the very next day. And so, counsel, we don't really have to decide, or the district court didn't have to decide, which of those things is true. The court just has to decide whether or not there is a genuine question, whether there's a genuine issue such that a jury hearing that would be the appropriate remedy. Yes, that's correct, Your Honor. And I'd like to point to another kind of evidence that I think is useful here, and that's details in the record that support an inference of pretext, which I think is also something that would distinguish this from maybe a typical FMLA retaliation claim. So as this court explained in Ross v. Campbell's suit, pretext evidence may tend to show that an employer regarded an employee as having an impairment. And here, again, that close temporal proximity that I described earlier, Jarvis' swift action of terminating Keene, one day after she decided that Keene had this significant condition precluding work, that is evidence of pretext. But also Jarvis' shifting justifications for Keene's termination, although the official termination paperwork, three documents say that inability to complete job duties was the reason, Jarvis said three years later in her deposition that the reason was falsification of documents. And that type of shifting justification is classic evidence of pretext, which this court has said may show maybe the type of evidence that shows that an employer regarded an employee as having an impairment. Can I ask you about pretext? So the district court dismissed this case on the inability to prove the prima facie case. So and that's the only issue I think the district court decided. In other words, if we reverse on that ground, do we remand back for then consideration of the legitimate proposed legitimate explanation by the employer and then the pretext analysis and response? You're right, Your Honor. The district court only focused on the issue of coverage, which, as I said, is just that first hurdle to to get through the door. But I do think that this because of the nature of the evidence here, the evidence lays out the the McDonnell Douglas burden shifting inquiry. And so, as I said just now, and as we described in our brief, assuming that Westmead's justification that they offer is that Keene falsified documents, that there is evidence that that was pretextual. And although I mentioned that a limiting principle of regarded as coverage is, of course, the idea that there are some certain defenses that an employer may assert. Westmead hasn't asserted those defenses here. So I do think that that this record is sufficient to raise a genuine issue of fact beyond coverage. But but you're you're right. The coverage was the issue that the district court decided that we should. So should we remand back for for a finding on those latter two parts of the analysis? Well, I think that given that this is a given again that this is a full record, I think it's necessary. But again, that would be a we would urge the court certainly to do that if that seems to be the court's record. And the district court didn't make a finding. That's correct. Yes. And I see I have a few more minutes, a couple more seconds, and then I'd like to reserve some time for rebuttal. I did just want to focus on this idea of an unspecified impairment. So we think that there's evidence that Jarvis believed Keene had a specific impairment, anxiety disorder. But even if Jarvis believed Keene had an unspecified impairment regarded as coverage, would extend there because otherwise an employer could fire any employee because of a suspected medical condition. And that, again, is consistent with Congress's directive that the amended ADA's definition of disability shall be construed in favor of broad coverage. And if no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you, Mr. Elliott for the Eppley. Yes. Thank you, Judge Donald. This is Steve Elliott. I'm from the Nashville Bar. I represent Westmead Place in this action. May it please the court. The grant of summary judgment in this case was correct. The district court did not commit any reversible error when it found that the EEOC did not create a genuine issue of material fact in this case. That Westmead Place regarded Ms. Keene as having an impairment under the ADA's third definition of disability. And that's what we're going with here. Your honors, the first and second disabilities have been waived by the EEOC. They're strictly traveling under this regarded as theory, even if the facts are construed in a light most favorable to the EEOC as the appellant. The undisputed findings of this case are that Ms. Jarvis, who was the director of nursing at Westmead Place. And by the way, this is a nursing home facility in Nashville, suburban Nashville. That nurse Jarvis did not know that Ms. Keene had any disability at the time of her termination. And let's just cut to the chase. The number one fact of this case is this. That when Ms. Keene went and Mr. Elliott. Yes, Mr. Elliott. Can I interrupt just a moment? It seems to me that one of the problems with with the district court opinion is that it instead of taking as true the or establish the evidence that came from the employee. Instead, the district judge kind of stood the standard on its head and based the result largely on the allegations by the by your client. And I'm wondering if that doesn't, in addition to the fact that I think we're going to run into even more as time goes on, if those things don't militate against the grant of summary judgment. Judge Daugherty, we would just respectfully disagree. We think the district court used really Ms. Keene's own words and her own actions in this case. As I was about to say, the most important fact of this case is that Ms. Keene, once she was told that she was not eligible. Under and that's because she had not worked there for 12 consecutive months, and so she did not enjoy the benefits of the at that point of time in her employment. Ms. Keene, once she realized she was not going to be paid for time off, and that's actually not how the works, of course. Once she realized that she was not going to be able to go under the FMLA and not receive paid time off, her response was not, well, I'd like some accommodations or, well, I'd like you to do this for me because I have this disability. Her response immediately was, I want to go back to work. And the trouble with that is Ms. Jarvis has now been presented with a certification of the health care provider in support of this FMLA request. She's kind of between a rock and a hard place, as Judge Rayler hit on earlier. This is almost an FMLA retaliation case, more than anything else. Westmead does not choose what theory of law it has to defend the case on. But, you know, Nurse Jarvis wants to do correctly by the FMLA. She's been presented with this certification that she thinks that is valid from Dr. Hashmat, that this woman needs a certain amount of unspecified leave for these flare-ups, which are not specified about. And then, so she says, I need a doctor's note from this doctor releasing you to return to work. And so, you know, that springs into motion this kind of, I think as Ms. Keene alluded to, this accelerated timeline. Mr. Elliott, I just want to ask you this. You know, if we take into account that Ms. Keene had previously noted her anxiety in her application paperwork, so Westmead was aware of that. And then she asked at this time for this FMLA leave for which she is not entitled. Why doesn't that, those two things, at least on its face, established an assertion of some impairment? And when you couple that with the written certification letter about these flare-ups, which was provided to Ms. Jarvis, looking at all of those things, why doesn't one get an inference that they regarded her as having at least some impairment, based on all of that record evidence? I think the trouble with that, Judge Donald, is the facts of the case don't end right there. In other words, we have more from the employment application documents and those very specific questions that Ms. Keene had to answer about medical conditions that she had had, and she's answering all of those in the negative. So, yes, she told them about anxiety when she applied for her employment. But in terms of hospitalizations, being under a doctor's care, being on any kind of real serious treatment, she's denying all of that. And keep in mind, from an ADA framework, she denies that she needs accommodations. She wants to work every shift under the sun. She wants to start work immediately. She could work temporary shifts. This lady presents as, and when you read her deposition, which I took, she wants to work badly. To her credit, in this case, Judge Donald, this lady is a worker. She wanted to work as soon as she was told that she did not qualify for FEMLA, and for whatever reason, whoever told this lady that she got 12 weeks of paid leave under FEMLA is really to blame here. That person got it wrong. And once Ms. Keene realized, I'm not going to get 12 weeks of paid leave, and that man is not going to fall from the sky, that benefit is not going to accrue to me, I want to go back to work immediately. And so if you look at this case in terms of just what those facts are that you gave, yes, maybe there's something there. But that's not the end of the analysis here. There are additional facts to consider from Ms. Keene's own mouth. This is a case where if you look at what the charging party herself has done and said, this is not an ADA case. It's not. There's some very, very good briefing on this case by the EEOC. But the problem is the EEOC cannot fix what this lady said in her employment application documents, what she told Nurse Jarvis. And then, you know, the reason why this timeline is accelerated to the point of being really 24 hours is because when Ms. Jarvis is presented with this return to work, and she has a question or two about it, and she says that's our policy or that's our protocol to ask a question or two of the doctor to make sure we understand what's going on. And the doctor, from the doctor's own mouth, and we took our deposition too, that doctor says, oh, no, I didn't fill out that return to work note. It wasn't me. So, you know, this case, unfortunately, for Ms. Keene, and everybody else really, has gone from FMLA to ADA to the false and forged note of a doctor that's presented to Ms. Jarvis, and Ms. Jarvis has no choice but to terminate her. Mr. Elliott, why isn't this an issue of fact for the jury to determine for them to make the call? Because this testimony is uncontroverted. It is. There's no way to make any kind of argument that someone's not credible, or this can be rebutted. This is what Ms. Jarvis has said, and it's unchallenged, and it's supported by Dr. Hashmat in her deposition. Mr. Elliott, Mr. Elliott, Judge Daughtry, one of the contested facts is whether that, what you call a fraudulent return to work document actually exists. I mean, in the end, that was the reason they gave for terminating her, but there's no proof that it ever existed that doesn't depend on somebody's testimony from your client, rather than the testimony of the non-moving party. I mean, there are a series of these factual disputes that are actually relevant to the disposition of this case. I didn't quite hear the end of that, Judge Daughtry. I apologize for the connection. Yeah, I know. I tried to turn up my volume as loud as I could. As regards, and hopefully this will address it, and if not, I can try to do that in a better way. She presents with a note. She is not allowed to go under FMLA. She needs a release to return to work to protect, really, Westmead Place and her if she has something happen to her later. She doesn't present the release, and the fact that the note cannot be found is really of no consequence. We have the doctor's own testimony saying, no, I didn't fill out a release. She needed to come see me. She didn't do it. I mean, if all of these facts were changed around, yeah, maybe Ms. Keene and the EOC would have a case here, but they don't. The really unfortunate thing is here, Ms. Keene sped up this process herself and tried to present something as a bill of goods that wasn't true and wasn't correct. When she's called on it by Ms. Jarvis and Dr. Hashmat, her effort to try to return to work is determined to be false. If Ms. Keene had simply taken a day or two, traveled from Nashville to Anderson, Indiana, which I think is just above Indianapolis, gotten in to see the doctor, gotten a return to work slip, and driven back in a couple of days, we wouldn't be here right now. But unfortunately, that's not the set of facts we have. We have a woman who decided to present herself in a certain way. Excuse me, could I get you to clarify the facts? She was terminated within 24 hours. There may be some dispute about the time, but how was she going to be able to drive to Anderson, Indiana and back? You just told me it would take a couple of days. Oh, absolutely. I think Ms. Jarvis' testimony was, I was not going to fire her if it took her a day or two to get this return to work note to me. The fact is that Ms. Keene presented this return to work note the following day, less than 24 hours. Ms. Jarvis calls Dr. Hashmat to verify it. Could I ask you whose proof that rests on? Isn't that entirely the position of Westmead Place and not the position of Ms. Keene? Did she testify or in her deposition, did she say that she had produced this clearance? I can't recall what she said in her deposition, but the fact is when you have really the only person who doesn't have a dog in this fight is not the EOC, is not Ms. Keene, and is not Westmead Place. It's Dr. Hashmat and Dr. Hashmat herself. And she said that she never wrote that thing. And all that does is support Ms. Keene's position that it didn't exist. And Mr. Elliott, just from my notes here, I show that the record says that Westmead told Keene that if she did not have the letter by the next day, they would let her go due to her being unable to do the job. Now, that seems to be what, and because I'm going from my notes, I can't give you the record citation, but obviously you can get that. Yes, Judge. I think there's also testimony in the record about, well, if you need to call your doctor's office and get them to fax a note, you certainly can do that. Ms. Jarvis would have accepted the faxed letter. Well, you know, Mr. Mr. Elliott, the doctor said that she couldn't give a clearance without seeing the patient. So that's not going to do any good. I mean, I'm just trying to point out where it is that there are these disputes of fact that really should not have resulted in summary judgment. Those things need to be, I would think, presented to a jury. And there's a letter by Westmead that says Keene was terminated because she was unable to perform her job duties. And so those contradictory statements seems to me would obviate the propriety of a summary judgment grant in this case and would argue for a determination by a jury. We would respond to the statement or reason for the termination as that was a document presented to the State Department of Labor for unemployment purposes. And as Ms. Jarvis testified, that she did not want to really kick her while she was down and deny this woman an opportunity for unemployment benefits. And if you put down forgery, altered documents, altered a medical record, then that is very much putting unemployment benefits in jeopardy for this woman. But there are other things you can put down. So you're saying that Westmead provided a false statement for compassionate reasons and in order to help her get benefits, but you're also saying that statement from Westmead was not in fact true. I don't think it's, I don't think the fact that this is not true. The fact is she's unable to perform job duties is true. She's unable to perform job duties because she's submitted this, she's not submitted the paperwork required to be released to return to work. And so rather than get into a long… That's subject to interpretation too. Is she not able to do her job because she didn't submit the clearance document or is she unable to do the job because we perceive her as disabled? No, she's unable to do the job because she did not submit the correct documents. And that we would respectfully submit as unchallenged. Well, that's your interpretation, Mr. Elliott, but that could be seen as a dispute of fact too. We would again disagree with that, that that's unchallenged, that there are documents that are internal that describe exactly what happened. And Ms. Jarvis' testimony on that point that she wanted this woman to get her benefits, that she had already said she can't live, she can't live without working for 12 weeks and be off work, and she wanted the FEMLA. That totally goes against that statement about wanting to go back to work. And so you've got this document that said unable to perform job duties, which is technically correct. And again, they did not want to jeopardize, they were not going to object to her getting her unemployment benefits. Okay, Mr. Elliott, we thank you for your argument. You're now out of time. Judge Rila didn't have much of an opportunity to get in. So I will, even though you're out of time, if he has a question, I will permit him to ask that question. Thank you. I'm good. Thank you. Thank you. Ms. King, your rebuttal. Thank you, Your Honor. I'll clarify at the outset, because I think it's an important point on the record, the evidence regarding the alleged false document. So the only evidence that there was a false document is, as Judge Daughtry noted, Teresa Jarvis' testimony. Jarvis claimed that she spoke to Keene's doctor, Dr. Hashmat, and that Hashmat said, Dr. Hashmat said that she didn't fill out this form, or this release. But Westmead hasn't cited testimony from Dr. Hashmat confirming that conversation. And in fact, Dr. Hashmat's call log from Keene's medical records doesn't reflect any conversation between Jarvis and the doctor, and it doesn't reflect any conversations about a false work release. So certainly there's a minimum issue of fact as to whether Keene ever produced a work release, a false work release to Jarvis, and that that was the reason for the termination. I also would like to just revisit those official termination documents that state a different reason, and that's the alleged inability to complete job duties. And so that's actually three termination documents, the official paperwork, that give that reason. And as Your Honors alluded to, I think a jury could find it incredible that an employer would put a reason that's not the actual reason on those official documents, especially since some of them were internal documents that would be for the internal file. Another thing I just wanted to clarify, and that I think goes back to an issue regarding Jarvis's reaction. So Mr. Elliott was explaining that Keene expressed an interest to go back to work when she's told she wasn't eligible for leave under FMLA. The district court did not acknowledge Keene's testimony that she did not expect to be paid for if she were to receive FMLA leave, but it certainly it's not unreasonable that Keene, when she learned she couldn't receive intermittent leave, that she would prefer to work rather than an alternative, such as being told to go home immediately and not complete her shift. So that certainly seems like a reasonable reaction, and a jury could so find. I'd also like to address something that Mr. Elliott alluded to, the idea that it was reasonable for Jarvis to request a medical release when Keene presented the FMLA certification. Now, I certainly wouldn't deny that employers will often request a work release when an employee requests leave. However, here the leave requested was intermittent leave, one to three days per month, and that's what the FMLA certification said. And so that makes Jarvis's reaction seem less reasonable, and a jury could view it as such, that her reaction was drastic and suggested that she mistakenly thought that Keene had a serious medical condition that precluded her from working, and our argument boils down to the idea that that could amount to an impairment and that Jarvis terminated her on that basis. And if no further questions, we ask this court to reverse the district court's decision because the record raises a genuine issue of fact as to regard it as coverage. Thank you. Thank you. We thank the parties for their arguments, written and oral. The matter is submitted and we will issue an opinion in due course.